UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

Case No. 20-20324

HON. GEORGE CARAM STEEH

DAVID ANDERSON, et al.,

    Defendants.
_____/

OPINION AND ORDER DENYING DEFENDANT ANDERSON'S MOTION TO SUPPRESS [ECF Nos. 29 and 31] AND DENYING DEFENDANT PATTERSON'S MOTION TO JOIN AS MOOT [ECF No. 41]

    This matter is before the court on defendant David Anderson's motion to suppress evidence obtained during a traffic stop [ECF Nos. 29 and 31] and defendant Marzell Patterson's motion to join in the motion to suppress [ECF No. 41]. The parties appeared before the Court for a virtual evidentiary hearing on the motion to suppress on December 3, 2020. Supplemental briefs were filed by both sides following the hearing. For the reasons stated in this opinion and order, defendant Anderson's motion to suppress is DENIED. Defendant Patterson's motion to join is denied as moot.

## FACTS

On June 13, 2020 at approximately 12:00 a.m., three Detroit Police Officers were on routine patrol in a marked scout car.  They were patrolling in a high priority area where there had been reports of a large party and shots fired.  They observed a running white 2007 Chevy Impala, with its headlights on and with heavily tinted windows, parked on the wrong side of the street, blocking the driveway of a home.  The officers pulled alongside the vehicle and illuminated it with their flashlights.  Upon seeing that the vehicle was occupied, Officer Dimitrius Stewart asked the driver and passenger to show their hands and proceeded to question the occupants about why they were parked on the wrong side of the street.   The occupants were cooperative, rolled down their windows and showed their hands upon request.  The driver, Ivan Vaughn, advised he was dropping off his friend, the passenger, defendant David Anderson, at his home.

While Vaughn was answering Officer Stewart's question, the officers observed that Vaughn and Anderson lowered their hands and Vaughn looked down.  These actions caused the officers to believe the occupants of the vehicle might have contraband in the vehicle.   At that point, the officers activated the emergency lights to conduct a traffic stop and exited the patrol car to investigate.

Officer Stewart approached the passenger side and asked Anderson whether he had any weapons. Anderson replied "no." Meanwhile, Officer Ryan McNeil approached the driver side and asked Vaughn whether he had any weapons. Vaughn responded that he was armed and possessed a valid Michigan concealed pistol license (CPL). Officer McNeil unlocked and opened the driver side door, shining his flashlight inside the car, while Vaughn retrieved his CPL. Officer Stewart again asked Anderson if he had a firearm, and he said he did not. Officer Stewart asked Anderson if he would consent to a search just to be sure, since his earlier answer about the presence of weapons turned out to be false. Anderson verbally declined consent to be searched.

While Officer McNeil was obtaining Vaughn's CPL, he used his flashlight to illuminate the front compartment of the car. Upon doing so, he saw the black handle of a handgun on the passenger floorboard under Anderson's feet. He also saw Anderson moving his feet in an apparent effort to conceal the firearm. Officer McNeil notified Officer Stewart of the presence of another firearm using the precinct's verbal cue—a secret phrase, not publicly known, that is intended to signal the presence of a firearm in the vehicle. McNeil said the code phrase two times and shined his flashlight on the passenger floorboard so Stewart would know the location of the firearm.

Upon hearing the verbal cue, Officer Stewart opened the front passenger door and conducted a search, beginning with a Terry frisk for officer safety.  During the patdown, Anderson's right foot tensed and pushed down as if he was trying to use his foot to conceal something.  Officer Stewart illuminated the floor of the passenger compartment with his flashlight and saw the handle of a firearm under Anderson's foot and then recovered it.

Vaughn's CPL was determined to be valid so his firearm was not seized and he was free to leave.  However, Vaughn was ticketed for no insurance, blocking a driveway and parking the wrong way.  His car was towed for lack of insurance and an inventory of the car was conducted at the scene.

Anderson was arrested for carrying a concealed weapon in a motor vehicle.  The officers seized the firearm, which was later determined to have been purchased on April 29, 2020 by co-defendant Marzell Patterson.  On July 29, 2020, Anderson and Patterson were indicted for making a false statement to acquire a firearm in violation of 18 U.S.C. § 922(a)(6) and 2.

ANALYSIS

I.     Fourth Amendment

Under the automobile exception, officers may conduct a warrantless search of a vehicle based on probable cause.  *United States v. Ross*, 456

U.S. 798, 823 (1982); *United States v. Pasquarille*, 20 F.3d 682, 690 (6th Cir. 1994). The standard is satisfied if, based on the totality of the circumstances, there is a fair probability that the vehicle contains evidence of a crime. *United States v. Padro*, 52 F.3d 120, 122–23 (6th Cir. 1995).

Additionally, officers may conduct a limited investigatory stop when they have reasonable suspicion that a suspect is engaged in a crime. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). If articulable facts reasonably support the conclusion that a suspect is armed and dangerous, officers may also conduct a protective patdown. *Id*. at 22–24; *Michigan v. Long*, 463 U.S. 1032, 1033 (1983). Under the plain-view exception, officers are ordinarily permitted to seize an object in plain view if they are lawfully positioned when they see the object and its incriminating character is immediately apparent. *United States v. Bishop*, 338 F.3d 623, 626 (6th Cir. 2003).

In this case, the officers were on routine patrol within their jurisdiction when they initiated a valid traffic stop based on the fact that the vehicle was facing the wrong direction, was blocking a driveway, the headlights were on, the engine was running, and the windows were tinted. The officers first questioned the driver, while they were still inside the patrol vehicle, regarding why he was parked on the wrong side of the street. While the driver's explanation that he was dropping off the passenger may have been considered reasonable, the fact that the occupants of the vehicle dropped

their hands and looked down alerted the officers to the possibility there might be weapons in the vehicle. The officers' suspicion was also heightened by the fact that they were on patrol in a high priority area where there had been reports of shots fired.

When Officer McNeil approached the car, the driver announced that he had a CPL and disclosed he had a pistol in his right pant pocket. McNeil unlocked and opened the driver's door and leaned into with his body, while shining his flashlight into the vehicle. Both parties agree that by leaning into the vehicle, McNeil was conducting a search. Although defendant characterizes the search as an unlawful one, the fact that Vaughn told McNeil he had a firearm in his pocket gave McNeil probable cause to search Vaughn.

While verifying Vaughn's driver's license and CPL from a position outside the vehicle, McNeil illuminated the inside of the vehicle and saw the handle of another firearm under Anderson's feet. At that point, McNeil gave Officer Stewart the verbal cue used to signify the presence of a firearm in the passenger area.

Michigan law makes it a crime to carry a pistol in a vehicle without a license and requires the license holder to show his license to a police officer if asked and to disclose the presence of any firearms in the vehicle. See MCL 750.227; MCL 28.425f. A second firearm in plain view under

Anderson's foot, not disclosed by Vaughn, provided probable cause that the car contained evidence of a crime. Because the probable criminal activity involved a firearm within Anderson's reach, it was proper for Officer Stewart to begin his search with a protective patdown.

The Sixth Circuit has held that where the criminal nature of a plain-view firearm in a vehicle is immediately apparent, a search and seizure on that basis does not violate the Fourth Amendment. See *United States v. Galaviz*, 645 F.3d 347, 356 (6th Cir. 2011); *United States v. Pearce*, 531 F.3d 374, 381–82 (6th Cir. 2008) (officers had probable cause where they saw a gun magazine in plain view in a vehicle that the suspect had just exited); *United States v. Avant*, 650 F. App'x 890, 893 (6th Cir. 2016) (rifle in plain view provided probable cause that the vehicle contained evidence of a crime); *United States v. Campbell*, 549 F.3d 364, 373 (6th Cir. 2008).

Anderson relies on *United States v. McCraney*, 674 F.3d 614, 616 (6th Cir. 2012), where the court said that the search must be justified under an exception to the warrant requirement, even where there is probable cause to arrest during a traffic stop. This case is distinguishable from *McCraney*, where the officer conducted a search based solely on seeing suspicious movement inside the vehicle and admitted that he would have let the defendant go if his license had not been suspended. The main distinction is that *McCraney* did not involve a firearm in plain view.

In this case, the officers also considered additional circumstances beyond the fact that the firearm was in plain view. Before Officer McNeil spotted the gun, Anderson had already violated an order by dropping his hands and had been caught in a lie about the presence of weapons in the vehicle. Furthermore, Anderson was trying to conceal the firearm with his feet. Anderson's behavior bolstered the officers' reasonable belief, based on the totality of the circumstances, that the firearm under his foot was evidence of a crime. *See, e.g., United States v. McDaniel*, 371 F. App'x 617, 621 (6th Cir. 2010) (during traffic stop for parking violation, totality of the circumstances, including apparent attempt to conceal a weapon, provided reasonable suspicion).

Defendant Anderson suggests that the initial traffic stop in this case was unreasonable in duration and therefore unconstitutional under the Fourth Amendment. "Once the purpose of the initial traffic stop is completed, an officer cannot further detain the vehicle or its occupants unless something happened *during the stop* to cause the officer to have a 'reasonable and articulable suspicion that criminal activity [is] afoot.'" *United States v. Davis*, 430 F.3d 345, 353 (6th Cir. 2005) (quoting *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999) (emphasis in original)).

Here, the stop had barely begun when Vaughn produced his CPL for review, and the search happened just moments later. At that point, there

had not yet been time to verify Vaughn's CPL or issue him citations for the traffic violations that prompted the stop to begin with.  The body camera footage confirms just how quickly everything happened.  The verbal cue is given about 57 seconds into Officer McNeil's body camera footage, and Officer Stewart's conducted the search about 3 seconds after that.  On Stewart's body camera footage, the code word is heard at the 1 minute and 14 second mark.

Further, "police officers may ask extraneous questions unrelated to the purposes of the stop, so long as those inquiries do not measurably extend the duration of the stop." *United States v. Cochrane*, 702 F.3d 334, 340 (6th Cir. 2012) (internal quotation marks omitted); *Arizona v. Johnson*, 555 U.S. 323, 333 (2009).  Thus, Officer Stewart did nothing wrong by asking about the presence of weapons in the vehicle, since those questions did not cause any measurable delay in the stop and were reasonable for purposes of officer safety anyway.

Anderson next suggests that the detention exceeded the reasons justifying the stop - being parked on the wrong side of the road.  A reasonable explanation was given to the officers given that the vehicle was idling by the home where Anderson lived and to which he was being dropped off.  The officers, however, both reported seeing a parked vehicle, idling with its lights on, and they could not initially tell whether the vehicle

was occupied given the tinted windows.

Anderson also argues that the fact the driver had a valid CPL rendered all firearms in the vehicle presumptively lawful. The Sixth Circuit rejected an argument similar to the one raised by Anderson in *United States v. Williams*, 483 F. App'x 21 (6th Cir. May 15, 2012) (despite the prevalence of people with CPLs, a pistol in a vehicle establishes a prima facie violation of state law). Here, Vaughn's CPL and disclosure of one firearm in his pocket, if anything, made the criminal nature of a second firearm on the passenger floorboard even more apparent.

While it is true that Anderson did not give his consent to be searched, consent is merely one of many possible exceptions to the warrant requirement. Here, the automobile exception combined with the plain-view doctrine was more than enough to justify the search.

II.  Inventory Search

The exclusionary rule does not apply where the evidence would inevitably have been discovered through lawful means. *United States v. Motley*, 93 F. App'x 898, 901 (6th Cir. 2004). The police reports show that Vaughn did not have proof of insurance, he received a ticket for that offense, and the vehicle was required to be towed. Because the vehicle had to be towed, the officers properly conducted an inventory search

before impounding it. (Ex. 3, Tow Card); *United States v. Lawrence*, 425 F. Supp. 3d 828, 833 (E.D. Mich. 2019).

During the inventory search, the officers would inevitably have recovered the firearm from the passenger floorboard. *See United States v. Kimes*, 246 F.3d 800, 805 (6th Cir. 2001) (upholding application of inevitable discovery doctrine based on justified impoundment and inventory of vehicle). Thus, regardless of whether the search violated the Fourth Amendment, it would be improper to suppress the firearm.

Anderson argues that he is just a passenger and if the firearm was discovered during the inventory search it would be attributable to the owner of the vehicle. However, Anderson's presence in the vehicle is not necessary because he was not charged with a possessory offense. The offence is that the gun was traced to a straw purchaser on behalf of Anderson.

III. Motion to Join

Co-defendant Marzell Patterson filed a motion to join in Anderson's motion to suppress. Patterson acknowledges that he lacks standing to challenge the seizure of the firearm from Vaughn's vehicle. However, Patterson argues that if the firearm obtained as evidence against Anderson is the result of an unconstitutional search, then the serial number taken from the firearm is "fruit of the poisonous tree" and must be suppressed as

evidence against Patterson. The court having determined that the firearm at issue was not the result of an illegal search or seizure, defendant Patterson's motion to join is denied as moot.

## CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED that defendant Anderson's motion to suppress evidence is DENIED.

IT IS HEREBY FURTHER ORDERED that defendant Patterson's motion to join is DENIED as moot.

It is so ordered.

Dated:  December 18, 2020

s/George Caram Steeh  
GEORGE CARAM STEEH  
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on December 18, 2020, by electronic and/or ordinary mail.

s/Brianna Sauve  
Deputy Clerk